**UNITED STATES v. MURTAUGH et al.**

No. 6270.

United States Court of Appeals
Fourth Circuit.

Argued June 20, 1951.

Decided July 17, 1951.

David Orlikoff, Atty., Department of Justice, Washington, D. C., (Holmes Baldridge, Asst. Atty. Gen., Bernard J. Flynn, U. S. Atty., C. Ross McKenrick, Asst. U. S. Atty., Baltimore Md., and Philip W. Yager, Attorney, Department of Justice, on brief), for appellant.

No counsel for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by the United States to require the defendants in the District Court to make restitution to the purchasers of certain houses and lots of the excess amount paid by them over and above the maximum sales price established under Priorities Regulation 33 (11 F.R. 601, 4085) passed under the Veterans' Emergency Housing Act of 1946, 60 Stat. 207, 50 U.S.C.A.Appendix, § 1821 et seq. It is unlawful under Section 5 of the Act for any person as principal or broker to effect such a sale and the Housing Expediter is authorized by Section 7(a) of the Act, whenever in his judgment any person has engaged in wilful violations of the statute, to apply to the appropriate court for an order enforcing compliance with such provisions. These statutes are sufficient under the decisions to give the District Court jurisdiction of the present suit by the United States and to authorize the relief prayed. Keele v. United States, 5 Cir., 178 F.2d 766; see also Keele v. Holt, 5 Cir., 171 F.2d 480; Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332.

The defendants in the District Court were the individuals comprising the firm of Murtaugh Bros., brick contractors, who had had little experience in building houses, and one Harry F. Bieber, a real estate broker who cooperated with them in making the sales.

On or about April 18, 1946, the partnership applied for and received authorization and priorities assistance for the construction of five dwellings in Silver Spring, Maryland, subject to the maximum sales price of $10,000 for each house including the lot. The Murtaughs did not own the lots but arranged to buy them through Bieber who had been a real estate broker for thirty-five years and had for sale three lots for his father and two lots for other clients. Before or at the time of the application for priority the Murtaughs informed Bieber that they could not build the houses and sell them with the lots for $10,000 and make a profit. Accordingly a plan was worked out under which in each case the price of the lot was added to the total purchase price under the guise of the cost of extras added to the building. These so-called extras were actually included in the description of the buildings contained in the application for priorities but they did not appear on the plans and specifications exhibited to the purchasers. In three instances the charge made for the extras exactly equalled the sales price of the lot although the extras were the same in each case while the price of the lots differed. Thus in one instance extras were charged at $1700; in another $1550; and in another $1450, these being the prices of the respective lots.

The judge found for the United States against the Murtaughs as to three sales and directed them to make restitution of the overcharges to the purchasers; but he denied the claims for restitution of the overcharges to the other purchasers on the ground that they were cognizant of the false statements contained in the receipts given them and were therefore in *pari delicto* with the Murtaughs. The judge also concluded upon the evidence that Bieber played no part in the irregularities and exonerated him from liability. The ruling

of the court on the last two points forms the basis of this appeal.

■■ The denial of restitution to the purchasers who had knowledge of the infraction of the law cannot in our opinion be sustained. It is not within the power of the parties to a contract, subject to valid governmental regulation, to frustrate the will of Congress and to ignore *pro tanto* its legislative fiat. Such has been the uniform conclusion of the courts which have considered the subject. See United States v. Grubl, 9 Cir., 186 F.2d 470; Ebeling v. Woods, 8 Cir., 175 F.2d 242; Kenney v. Hood, 5 Cir., 158 F.2d 226.

■ We are also unable to find support for the view that Bieber did not know what was going on. There is evidence that he did not take part in the application for priorities and was not acquainted with the details therein contained; but the Murtaughs consulted him when they found they could not conform to the selling price set by the United States and he devised the plan to add the price of the lot to the purchase price of the property in the form of extras. He handled each of the transactions and drew the papers for the Murtaughs and the buyers to sign. He was aware that the price of the extras varied with the price of the lot in each case. He handled the money paid in by the purchasers and turned it over to the Murtaughs as the buildings progressed. His testimony that in spite of thirty-five years' experience as a real estate broker he knew nothing about priorities in general or the irregularities that were going on beneath his eyes seems to us incredible. Certainly he had the same opportunity to know the true situation as did the two purchasers who were found by the court to be participants in the scheme.

The order of the court is affirmed insofar as it directs restitution to three of the purchasers; but is reversed as to the denial of restitution to two of the purchasers and as to the dismissal of the complaint against Bieber; and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.