**METAL TRADES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Civ. A. No. 2:90–0497–1.**

United States District Court,
D. South Carolina,
Charleston Division.

Aug. 3, 1992.

690

Marvin D. Infinger, Sinkler & Boyd, Charleston, SC, for appellant.

John H. Douglas, Asst. U.S. Atty., Dept. of Justice, Charleston, SC, for appellee.

## ORDER

HAWKINS, Chief Judge.

This action is on appeal from a decision of the Armed Services Board of Contract

Appeals (ASBCA) pursuant to the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*

Initially, a timely appeal was lodged with the Federal Circuit Court of Appeals under 41 U.S.C. § 607(g). The Federal Circuit transferred the case to this court pursuant to 41 U.S.C. § 603, which provides in pertinent part that "appeals under paragraphs (g) of § 607 of this Title ..., arising out of maritime contracts, shall be governed by Chapter 20 or 22 of Title 46 as applicable, to the extent that those Chapters are not inconsistent with this Chapter." [1]

The SAA and PVA are not set up as Appellate remedies, but rather as remedies of first resort. Thus, the applicable standard of review is unclear. However, the factual disputes are limited, and regardless of what the standard of review is (i.e., whether substantial evidence exists to support the ASBCA findings, or whether the ASBCA finding was in accordance with the preponderance of the evidence, or, for that matter, whether this court is free to make de novo findings) the result is the same.

## I

### BACKGROUND FACTS AND SUMMARY OF PROCEEDINGS AND RESOLUTION OF THE CLAIM BELOW

On April 14, 1987, Appellant and Appellee entered into a repair and maintenance contract for a U.S. naval vessel, the USS SANTA BARBARA. The contract was issued as Job Order No. 115. Portions of the contract required Appellant to replace the vessel's fire pump and soot blower piping. In the course of these replacements, insulation and lagging material were encountered. As it turned out, the insulation and lagging material contained asbestos. The presence of asbestos necessitated special removal, treatment, handling, transportation, storage, and disposal techniques. The special techniques were mandated by law. Because of these special requirements, Appellant was forced to modify upwardly the subcontract under which the fire pumps

and blower piping was replaced because of the added costs incurred by its subcontractor in complying with the law relating to asbestos removal, treatment, handling, transportation, storage and disposal. The cost to Appellant was significantly greater than its bid estimate as to those items.

Appellant sought an adjustment to the contract price based on the increased cost of treatment, removal, storage, transportation, and disposal of the asbestos-containing material. Its claim is bottomed on 10 U.S.C. § 7311, enacted November 14, 1986. Section 7311, which applies only to repair and maintenance contracts for naval vessels, requires in such contracts that the Navy identify *and* quantify the type *and* amount of hazardous wastes expected to be generated during performance of the contract. In cases where the contractor, during performance of the contract, discovers hazardous wastes different in type *or* amount from those identified in the contract, § 7311 requires that the Navy *shall* renegotiate the contract. Asbestos was not positively identified and was not in any manner quantified by the Navy in Job Order No. 115. Even so, Appellee refused to renegotiate the contract after discovery of the asbestos-containing material, insisting that asbestos is not a hazardous waste that the Navy is required to identify and quantify under § 7311, and further insisting that Appellant was not surprised by the fact that asbestos was contained in the insulation and lagging and thus was not harmed by Appellee's failure to identify and quantify it.

As a result of the Appellee's refusal to renegotiate, Appellant, pursuant to the Contract Disputes Act, commenced an action with the Armed Services Board of Contract Appeals ("ASBCA"). A full hearing was conducted December 1, 1988, at which the parties produced both testimony and exhibits. The record of the proceedings is included in a Joint Appendix compiled for this appeal.

---

1. Chapters 20 and 22 of Title 46 refer to the Suits in Admiralty Act and Public Vessels Act, respectively. (hereinafter SAA and PVA).

On February 9, 1989, the ASBCA issued its Order finding that asbestos is a hazardous waste that must be identified and quantified under § 7311, and finding that Appellee by failing to quantify the asbestos, breached its statutory duty imposed by § 7311. Despite these findings, the Order concluded that Appellant is not entitled to renegotiation of the contract because of a standard item to the contract, Standard Item No. 009–10. This standard item provides that all insulation and lagging on board the ship is to be considered asbestos. Although Standard Item No. 009–10 did not positively identify the insulation and lagging as containing asbestos, and although it completely failed to quantify it, the ASBCA concluded that "[a]ppellant here cannot reasonably argue that it was surprised by the amount of asbestos actually found," in light of Standard Item No. 009–10.

## II

## FACTS CONCLUSIVELY ESTABLISHED IN THE OPINION OR BY STIPULATION OF FACTS BETWEEN THE PARTIES

The following pertinent facts were either established by the ASBCA's findings, or were not challenged on appeal by Appellee or were agreed to by Appellee in a stipulation of facts ("S.F.") submitted at the hearing. Thus, these facts are conclusively established as against Appellee without further inquiry.

1. Asbestos was not identified or quantified in Job Order No. 115. (App. p. 5, Opinion of ASBCA).

2. The presence of asbestos in lagging cannot be determined by visual inspection. (App. pp. 5 & 18; Order of ASBCA; S.F. No. 13).

3. Asbestos in insulation generally cannot be determined by visual inspection since most insulation is hidden from view. (App. p. 8; Order of ASBCA).

4. Asbestos is recognized as a serious health hazard when its fibers are ingested or inhaled. Usually exposure occurs when asbestos fibers are produced as a fine dust and become airborne. Asbestosis is pulmonary fibrosis caused by accumulation of asbestos fibers in the lungs. (App. pp. 5 and 18; Order of ASBCA; S.F. No. 9).

5. The cost of treatment, removal, handling, transporting, and disposing of asbestos is ten times as costly as that of ordinary insulation. (App. pp. 7–8; Order of ASBCA).

6. Asbestos must be treated properly, removed properly, handled properly, transported properly and disposed of properly to insure that the asbestos fiber which is hazardous to human health does not get airborne. (App. p. 7; Order of ASBCA).

7. The Navy generally stopped using asbestos on its vessels in 1978. (App. p. 5; Order of ASBCA).

## III

## FACTS ESTABLISHED THROUGH UNCONTRADICTED EVIDENCE

The following facts are among the important facts established by evidence offered by Appellant, uncontradicted and unchallenged by Appellee:

1. The USS SANTA BARBARA was not available for ship check (i.e., physical inspection of the vessel) prior to the award of Job Order No. 115. (App. p. 25).

2. The amount of asbestos-containing material was approximately 450 lineal feet. (App. p. 81, Exhibit A–10).

3. The asbestos-containing material removed was in friable form. (App. pp. 26 and 87; DHEC Reg. 61–86.1; exh. A–28).

4. Appellant did not know that asbestos was on the vessel prior to actual discovery of it. (App. p. 31).

5. As a result of the discovery of asbestos, Appellant modified its existing subcontract for the performance of those portions of the job at which asbestos was found. The modification was in the form of a substantial increase in the contract price. (App. pp. 26 & 28).

6. Special treatment, storage, transportation, and disposal requirements for asbes-

tos are required in order to prevent the release of asbestos fibers into the atmosphere. (App. pp. 39–44 & 74).

IV

THE FINDING BY THE ASBCA THAT APPELLANT CANNOT REASONABLY ARGUE THAT IT WAS SURPRISED BY THE AMOUNT OF ASBESTOS ACTUALLY FOUND ON JOB ORDER NO. 115 IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE[2]; FURTHER, THIS COURT, VIEWING THE EVIDENCE ANEW, CONCLUDES OTHERWISE

■ 10 U.S.C. § 7311(b) provided at the time pertinent hereto that the Secretary of the Navy *shall* renegotiate a contract for naval ship repair if the contractor discovers hazardous wastes different in *type or amount* from those identified in the contract. "The word 'shall' is ordinarily 'the language of command.' " *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947). Thus, § 7311 places a positive and mandatory duty on the Secretary of Navy to *identify and quantify* hazardous wastes expected to be generated in every contract for repair and maintenance of naval vessels.[3]

**2.** For purposes of this opinion, it is assumed that the Secretary of the Navy is excused from his obligation to renegotiate if the contractor is not surprised by the amount of asbestos actually present on Job Order No. 115. In light of the mandatory direction given the Secretary of Navy by the Congress, it is hard to imagine that the Congress visualized that surprise by the contractor is a prerequisite to renegotiation of the contract. "Surprise" may be distinguished from actual knowledge of asbestos and its quantity.

**3.** The text of § 7311 as it existed at the time pertinent hereto read in its entirety as follows:

*§ 7311. Repair or Maintenance of Naval Vessels: Handling of Hazardous Waste*

a. *Contractual provisions*—The Secretary of the Navy shall ensure that a contract entered into for repair or maintenance of a naval vessel includes the following provisions:

(1) *Identification of hazardous wastes*—Provisions identifying the type and amounts of hazardous wastes that are expected to be generated during performance of the repair or maintenance.

■ The ASBCA found that asbestos is a hazardous waste under § 7311. Furthermore, the ASBCA found that Appellee in this case breached its statutory duty to identify and quantify the asbestos expected to be generated on Job Order No. 115. The finding of breach is not challenged, and realistically it could not be, for as asbestos was not quantified in any way, Appellant's discovery of it constituted discovery of a hazardous waste different in *amount* than that identified in the contract, i.e., 450 lineal feet versus none. Under such facts, renegotiation was mandated under § 7311, if applicable, because renegotiation is required if *either* a different *type* of hazardous waste *or* a different *amount* is discovered by the contractor.

In spite of these findings and conclusions, the ASBCA excused the Navy from its positive duty to renegotiate the contract, because of a standard provision of the contract, Standard Item No. 009–10, which provides that the contractor is to consider all insulation and lagging to be asbestos-based material. From this, the ASBCA must have assumed that Appellant knew of or at least could not be surprised by the existence of asbestos on Job Order No. 115. Assuming this to be an acceptable assumption under § 7311, there is no evidence tending to establish or even imply

(2) *Compensation*—Provisions specifying that the contractor shall be compensated under the contract for the work performed by the contractor for duties of the contractor specified under paragraph (3).

(3) *Statement of work*—Provisions mutually acceptable to the Navy and the contractor specifying the responsibilities of the Navy and of the contractor, respectively, for the removal, handling, storage, transportation, and disposal of hazardous wastes generated during the performance of the repair or maintenance.

b. *Renegotiation of contract*—The Secretary of the Navy shall renegotiate a contract described if in Subsection (a) if—

(1) The contractor, during the performance of repair or maintenance under the contract, discovers hazardous wastes different in *type or amount* from those identified in the contract; and [emphasis added]

(2) Such hazardous waste originated on the naval vessel on which the repair or maintenance is being performed.

that Appellant knew of the *quantity* of asbestos containing material. Indeed, the uncontradicted testimony of Appellant established that it did not know asbestos was present in lagging and insulation, and therefore it could not have known the quantity of asbestos-containing material that was present.

With this as background, if the CDA provides the controlling standard of review for this appeal, the ASBCA's finding must be reversed if not supported by "substantial evidence." 41 U.S.C. § 609(b). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Blount Bros. Corp. v. U.S.*, 872 F.2d 1003, 1005 (Fed.Cir.1989) (citation omitted). Although this standard is severely limiting, the Court may reverse a finding of fact even where there is conflicting testimony on the point. *Id.* Here, however, there is no evidence indicating knowledge of the amount of asbestos on Job Order No. 115 prior to discovery of the asbestos during the course of performance of the contract, and, therefore, there is no conflict in the evidence. The only evidence concerning Appellant's knowledge or lack of surprise concerning asbestos was as to its possible existence because of Standard Item No. 009–10. This cannot translate into knowledge of the precise amount of asbestos that was actually present.[4] Of course, it is the *amount* of the waste which impacts the cost of performing the contract.

Further, viewing the evidence *de novo*, I find that there was not quantification of asbestos prior to the contract award, and in light of this, § 7311 required renegotiation of the contract. Section 7311 was therefore violated.

4. If he could, the Secretary of the Navy would never have to renegotiate; he would simply identify hazardous waste and pay little attention to accurate quantification.

5. In view of this, the ASBCA concluded that if the quantity is erroneous, that the Navy is "authorized" to renegotiate the contract. Of course, the wording of the statute mandates the Secretary of Navy *to renegotiate* by providing that he *shall* renegotiate the contract.

V

## STANDARD ITEM NO. 009–10 OF JOB ORDER NO. 115 IS UNENFORCEABLE IN THAT IT *ASSUMES* THE EXISTENCE OF A § 7311 HAZARDOUS WASTE INSTEAD OF IDENTIFYING IT AND QUANTIFYING IT AS REQUIRED BY § 7311.

The ASBCA properly found the purpose of § 7311 is "to avoid the possibility of a contractor underbidding or overbidding on a contract due to the possibility of asbestos being present. The intent of Congress is crystal clear that the Navy, in this appeal, has to identify the asbestos and quantify the amount...."[5]

The burden is on the Secretary of the Navy to identify and quantify the hazardous wastes expected to be generated aboard the vessel during contract performance. The onus is placed upon the party in the best position to make these determinations, the owner. Standard Item No. 009–10, which was promulgated prior to § 7311, contradicts this requirement in that it places the onus upon the contractor to identify and quantity asbestos by assuming that all insulation and lagging is asbestos unless the contractor conclusively establishes otherwise.

The Navy as owner is required either to provide this information or, if it does not do so, to renegotiate the contract. This is an obvious acknowledgment of the Navy's superior knowledge of the materials on its vessels and of superior access to the vessel to investigate the materials. To shift this obligation to the contractor by Standard Item No. 009–10 is directly inconsistent with § 7311.

And if § 7311 applies to asbestos, then the result would be that Standard Item No. 009–10 would by contract avoid the specific requirement of legislation applicable to this contract.[6,7]

6. Of course, it is axiomatic that statutes which relate to the subject matter of the contract form a part of the contract just as if they were expressly incorporated within its terms. *Von Hoffman v. City of Quincy*, 71 U.S. (4 Wall) 535, 550, 18 L.Ed. 403 (1866); *Northern P.R. Co. v. Wall*, 241 U.S. 87, 91, 92, 36 S.Ct. 493, 495, 496,

7. See note on p. 695.

The ASBCA's elevation of that provision over the terms of the statute was error. "If the regulatory statute is otherwise within the powers of Congress, therefore, its application may not be defeated by private contractual provisions." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986). "It is not within the power of the parties to a contract, subject to valid governmental regulation, to frustrate the will of Congress and to ignore pro tanto its legislative fiat." *U.S. v. Murtaugh*, 190 F.2d 407, 409 (4th Cir.1951).

## VI

## ASBESTOS IS A HAZARDOUS WASTE WITHIN THE MEANING OF 10 U.S.C. § 7311.

■ Appellee declined to cross-appeal the conclusion of the ASBCA finding that asbestos is a hazardous waste under 10 U.S.C. § 7311, although the matter was hotly contested at the trial level. This Court is unsure if the issue has been preserved for appeal. Because of the uncertainties surrounding this appellate review process, the issue of whether asbestos is a hazardous waste under § 7311 will be fully discussed.

Appellee asserts that asbestos is not a hazardous waste under § 7311. It argues that in order for a substance to qualify under § 7311 it must be considered a hazardous waste under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq.*; Appellee continues that asbestos is not a hazardous waste under RCRA because it has not been listed as such in regulations promulgated pursuant to RCRA by the Environmental Protection Agency (EPA) or its South Carolina delegatee, the Department of Health and Environmental Control (DHEC). This argument fails.

## A

## PURPOSE OF § 7311

The legislative history of § 7311 is scant. Section 7311 deals with naval contracts. As the text of the statute *requires* identification and quantification of hazardous waste in naval ship repair contracts and requires contract renegotiation in light of "discovery" of hazardous wastes different in type or amount, the statute recognizes that the type and amount of hazardous wastes encountered impact significantly on the cost of performing naval contracts. It follows, therefore, that the focus of the statute is on cost adjustment, and not on rigid adherence to administrative classification of hazardous materials as hazardous wastes or hazardous substances under environmental legislation.

As the legislative history is scant, the testimony of former Congressman Thomas F. Hartnett (Hartnett) of the First Congressional District for South Carolina was offered on the point. Hartnett served on the House Armed Services Committee and the Seapower Sub–Committee responsible for the "markup" of the introductory bill. Hartnett was a co-sponsor of the legislation. (App. p. 21).

Hartnett described the problem that the legislation sought to remedy:

> [W]e didn't want them [contractors] to be losing money on contracts that they might have with the government due to such things as disposing of hazardous waste, extraordinary expense to them, causing them sometimes to lose money on contracts."

This particular legislation really dealt with disposing of hazardous waste, hazardous materials during the performance

---

60 L.Ed. 905 (1916); *Wood v. Lovett,* 313 U.S. 362, 370, 61 S.Ct. 983, 987, 85 L.Ed. 1404 (1941). As § 7311 duties are mandated by Congress, they must control contractual provisions entered into between the parties.

**7.** The Navy may say that it has discharged its duty by blanket statement that all insulation is asbestos. This loses all appeal in the face of the Navy's decision in 1978 to no longer use asbestos on vessels. Because of this, the prevalence of asbestos is declining. The undisputed evidence establishes that virtually every bid (99%) for insulation removal is based on the assumption that it is not asbestos unless positively indicated. (*See,* App. p. 32, Test. of Enman).

of (sic) this contract, that was brought off the ship. In some instances, it was low level nuclear waste that had to be disposed of. In some levels, it was asbestos. It might have been contaminated waters. It might have been ... whatever the extraordinary substance, if it were deemed hazardous, and had to be disposed of in a manner not customary with other waste generated, in an extraordinary manner or expense, to help them [contractors] recoup any losses in handling that type of material.

(App. pp. 22–23).

Hartnett stated that the term "hazardous waste" as used in the statute was not tied to RCRA or regulations promulgated pursuant to RCRA. This is evidenced by the following colloquy:

Q. (by Mr. Infinger)

During the debates, was it stated or said that the term hazardous waste within that Act (§ 7311) be limited to any particular statutory scheme or by reference to a list of any particular hazardous waste, compiled by any particular regulatory body?

A. (by Mr. Hartnett)

Mr. Infinger, this legislation, although it had to do with and was generated by the handling of waste, *had nothing to do with the definition of waste.* It had to do with whatever the Navy or local government, or state government or federal government said had to be disposed of in an extraordinary manner, if there were additional expenses involved in the handling of materials being brought off that ship, not generated by the contractor's work, but generated by the Navy itself, and the contractor had to incur additional expense, that he or she then could go back and renegotiate with the Navy some additional money or a change order or whatever the language used for this type thing is so as to prevent that *contractor from losing money on a problem that was not foreseen in the*

bidding of, the receiving of, the agreeing to perform that contract; and so it really didn't have anything to do with—I don't think we wrote a definition of hazardous material. It was whatever the contractor had to handle in an extraordinary manner that cost him or her additional money, that they could go back and renegotiate with the Navy for an opportunity to recoup that additional loss.

(App. p. 23).

In support of its argument that RCRA controls the definition of hazardous waste, Appellee argues that portions of the legislative history of § 7311 describe an offered amendment to the bill which would have required RCRA identification numbers with respect to hazardous wastes generated as evidence that hazardous waste under § 7311 means RCRA hazardous wastes. However, the amendment was defeated.[8] *See* 1986 U.S.C.C.A.N., 6413, 6580–81.

The House provision would also require each naval vessel or Supervisor of Shipbuilding in lieu of each vessel, at or upon which hazardous wastes are produced or from which hazardous wastes are removed to obtain an identification number in accordance with the regulations issued by the Environmental Protection Agency. The Senate bill contained no similar provision. The conferees agree to the house provision with two amendments ... *the conferees agreed to delete the provision that would require naval vessels or supervisors of shipbuilding to obtain hazardous waste identification numbers.* (emphasis added).

Common sense establishes that the purpose of the renegotiation provision of § 7311 is to protect contractors through mandatory contract renegotiation, when hazardous substances, costly to handle and dispose of, that have not been identified or quantified prior to the contractor's performance, are encountered. Hartnett's testimony bolsters this, and his testimony is

---

**8.** A subsequent amendment to the legislation indicates that the proposed use of identification numbers was designed to address a problem other than that of renegotiation, *i.e.,* ultimate liability to others, *infra.*

persuasive. "[I]t is the sponsor that we look to when the meaning of statutory words are in doubt." *NATL Wood–Work Manufacturers Association v. NLRB*, 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 reh'g denied, 387 U.S. 926, 87 S.Ct. 2026, 18 L.Ed.2d 985 (1967).

The intent of the law with respect to renegotiation is to protect contractors who discover unidentified and unquantified wastes from harmful economic consequences not of their making. The statute should be construed so as to effect its intended purpose. *Motor Vehicle Mfrs. Ass'n. of United States, Inc. v. Ruckelshaus*, 719 F.2d 1159, 1165 (D.C.Cir.1983). Effectuation of legislative intent prevails over all other principles of statutory construction. *Neptune Mutual Ass'n., Ltd. of Bermuda v. United States*, 862 F.2d 1546, 1549 (Fed.Cir.1988).

To give effect to the statute's purpose, asbestos must be considered hazardous waste within the meaning of § 7311.

## VII

### ASBESTOS IS A HAZARDOUS WASTE WITHIN THE MEANING OF RCRA

■ However, even if RCRA and the regulations promulgated thereunder determine absolutely what the term "hazardous waste" means under § 7311, as urged by Appellee, reference to RCRA establishes that asbestos is a hazardous waste. Asbestos is not listed as a hazardous waste in administrative *regulations* promulgated pursuant to RCRA. However, the term hazardous waste as defined by the actual legislation is sensible and clearly embraces waste asbestos as hazardous waste. 42 U.S.C. § 6903 defines "hazardous waste" as follows:

... (5) The term "hazardous waste" means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—

(A) Cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

(B) Pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

As waste asbestos is "discarded material, including solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial.... operations," it clearly is a solid waste under RCRA. *See* 42 U.S.C. § 6903(27). Therefore, if asbestos possesses the characteristics described in § 6903(5), then it is a hazardous waste under RCRA.

Section 6903(5) provides alternative definitions for hazardous wastes. Under those definitions, if one of the following questions is answered affirmatively then the substance is a "hazardous waste":

1. May it cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating, reversible illness? *or*

2. May it pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of or otherwise managed?

## A

### ASBESTOS CAUSES, OR SIGNIFICANTLY CONTRIBUTES TO AN INCREASE IN MORTALITY AND AN INCREASE IN SERIOUS IRREVERSIBLE, OR INCAPACITATING REVERSIBLE ILLNESS.

This Court takes judicial notice of the health hazards attributable to asbestos exposure. Asbestos is highly regulated at both the federal and state levels because of the health hazards associated with exposure to it. Thus, the following descriptions appear in 29 CFR § 1910.1001, at p. 722, which regulations were promulgated under OSHA.

## II. TOXICOLOGY

Clinical evidence of the adverse effects associated with exposure to asbestos, tremolite, anthophyllite, and actinolite, is present in the form of several well-conducted epidemiological studies of occupationally exposed workers, family contacts of workers, and persons living near asbestos, tremolite, anthophyllite, and actinolite mines. These studies have shown a definite association between exposure to asbestos, tremolite, anthophyllite, and actinolite and an increased incidence of lung cancer, pleural and peritoneal mesothelioma, gastrointestinal cancer, and asbestosis. The latter is a disabling fibrotic lung disease that is caused only by exposure to asbestos

.    .    .    .    .

## III. SIGNS AND SYMPTOMS OF EXPOSURE–RELATED DISEASE

Asbestosis is pulmonary fibrosis caused by the accumulation of asbestos fibers in the lungs. Symptoms include shortness of breath, coughing, fatigue, and vague feelings of sickness. When the fibrosis worsens, shortness of breach occurs even at rest. The diagnosis of asbestosis is based on a history of exposure to asbestos, the presence of characteristic radiologic changes, end-inspiratory crackles (rales), and other clinical features of fibrosing lung disease. Pleural plaques and thickening are observed on X-rays taken during the early states of the disease. Asbestosis is often a progressive disease even in the absence of continued exposure ... In severe cases, death may be caused by respiratory or cardiac failure.

The health hazards of asbestos are so well known that in enacting the "Asbestos School Hazard Abatement Act of 1984," codified at 20 U.S.C. § 4011 *et seq.*, Congress made the following *legislative findings:*

§ 4011—*Findings and Purposes.*

(a) The Congress finds that—

(1) Exposure to asbestos fibers has been identified over a long period of time and by reputable medical and scientific evidence as significantly increasing the incidents of cancer and other severe or *fatal diseases*, such as asbestosis.

(Emphasis added).

Indeed, Standard Item 009–10 of Job Order 115 requires that caution and danger signs be provided in proximity to the asbestos work area.

It is beyond cavil that asbestos causes or significantly contributes to an increase in mortality and an increase in serious irreversible, or incapacitating reversible, illness and is thus within the statutory definition of hazardous waste as provided by RCRA.[9] "As a general rule, statutory definitions declaring what a term 'means' exclude any other meaning." *Colautti v. Franklin*, 439 U.S. 379, 393, n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979).

### B

ASBESTOS MAY POSE A SUBSTANTIAL PRESENT OR POTENTIAL HAZARD TO HUMAN HEALTH ... WHEN IMPROPERLY (1) TREATED, (2) STORED, (3) TRANSPORTED, OR (4) DISPOSED OF, OR OTHERWISE MANAGED.

Because of the hazardous nature of asbestos, special requirements are imposed by law for the treatment, storage, transportation, and disposal of it. Specific requirements in this regard are a result of overlapping statutory and regulatory schemes including OSHA and NESHAP (National Emission Standards for Hazardous Air Pollutants), in conjunction with the Clean Air Act. The Dept. of Transportation (DOT) also regulates and/or delegates regulation of carriage of asbestos.

In South Carolina, regulation of asbestos removal operations, such as ship repair contracts, has been largely delegated to the Department of Health and Environmental Control (DHEC), which has promulgated "Standards of Performance for Asbestos

---

**9.** Asbestos is considered hazardous in quantities of one pound or more. See 49 C.F.R. pts. 171 & 172, "Final Rule—Hazardous Substances." (Ex. A–25).

Removal Operations." S.C.Code Regs. 61–86.1, 1976 (Supp.) (App. p. 87; Ex. A–28).

These requirements were discussed by both Appellant's expert witness, with over 20 years experience in the asbestos abatement industry, as well as Appellee's expert on hazardous wastes.

1. *Treatment Requirement.* S.C.Code Regs. 61–86.1, 5.1.2.1 provides that all asbestos-containing material *shall* be treated by thoroughly wetting same. The requirement of wetting is to prevent release of asbestos fibers into the air. (App. pp. 41–42) Appellee's own expert witness testified that this treatment, if *improperly* administered, constitutes a health hazard. (App., p. 78).

2. *Storage Requirements.* S.C.Code Regs. 61–86.1, § 5.1.1.7 requires that, after removal asbestos waste shall be placed in impermeable containers for storage. The purpose of this requirement is to prevent the release of fibers into the atmosphere. (App. p. 42). Again Appellee's expert witness testified that if the storage is not effected properly, health hazards are posed to people around asbestos. (App. p. 78).

3. *Transportation Requirements.* S.C.Code Regs. 61–86.1, § 5.1.1.9 requires that the transportation of asbestos shall be effected in such a way as to prevent release of asbestos fiber into the air. *See also* DOT Reg. at 49 CFR § 172.1 *et seq.* This is also a requirement of NESHAP. (App. p. 43). Toward this end, trucks utilized in transportation of asbestos waste must be lined with polyethylene, which is designed to prevent escape of asbestos fibers into the air. The polyethylene must also be disposed of. (App. pp. 43–44). Again, Appellee's expert witness testified that improperly transported asbestos would constitute a human health hazard. (App. p. 78).

4. *Asbestos may pose a human health hazard if improperly disposed of.*

S.C.Code Regs. 61–86.1, § 5.1.1.10 requires that asbestos *shall* be disposed of at a location approved by DHEC for handling

asbestos waste. Once disposed of there, the asbestos must be covered with six inches of soil within 24 hours of its disposal. (App. pp. 43–44). *See also* 40 CFR § 61.156. Again Appellee's expert witness acknowledged that if the asbestos were not disposed of properly, it would constitute a human health hazard. (App. p. 79).

Thus, it is clear that waste asbestos meets *either* definition of hazardous waste under RCRA. Asbestos may pose a substantial present or potential hazard to human health when improperly treated, stored, transported, disposed of, or otherwise managed; and it may cause or significantly contribute to an increase in mortality. Therefore, even if the definition of hazardous waste is tied to RCRA, asbestos is included within the definition.

The fact that the EPA has not included asbestos within its list of hazardous wastes at 40 CFR pt. 272 and that DHEC has not included asbestos within its lists of hazardous wastes is of little moment.[10]

To reiterate, the term hazardous waste used in § 7311 is not meant to be determined administratively by the Environmental Protection Agency or its delegatee as stated by former Congressman Hartnett above. Moreover, the list of hazardous waste to be formulated by EPA (or its delegatee) is an evolving effort, *See* 42 U.S.C. § 6921(a). Indeed neither the EPA nor DHEC has heeded fully the directive given it by Congress in § 6921(a), that they

> [d]evelop and promulgate criteria for identifying the characteristics of hazardous waste, and for listing hazardous waste, which should be subject to the provisions of this sub-chapter, taking into account toxicity, persistence, and degradability in nature, *potential for accumulation* in tissue, and other related factors such as flammability, corrosiveness, and other hazardous characteristics.

*Id.* (Emphasis added).

The major danger of asbestos is accumulation in lung tissue. The ASBCA and this Court judicially notice this and Appellee

---

10. Perhaps asbestos has not been listed as a hazardous waste by these agencies because of

other pervasive regulations of it and the danger of inconsistent regulation.

has so stipulated. (App. p. 18, S.F. No. 9; 29 C.F.R. § 1910.1001) Yet neither the EPA regulations nor the DHEC regulations, when considering whether waste should be considered hazardous under RCRA, take into account the potential for accumulation in tissue. Both agencies focus instead on the characteristics of ignitability, corrosivity, reactivity, and toxicity.

This is not surprising. Congress has expressed some dissatisfaction with the EPA's regulation of asbestos in other contexts. Thus in the "Asbestos Hazard Emergency Response Act" of 1986, codified at 15 U.S.C. § 2641 *et seq.* (dealing with asbestos abatement in schools) Congress found:

§ 2641. Congressional Findings and Declaration of Purpose.

(a) *Findings.*

The Congress finds the following:

(1) The Environmental Protection Agency rule on local educational agency inspection for, and notification of, the presence of friable asbestos containing material in school buildings includes neither standards for the proper identification of asbestos containing material and appropriate response actions with respect to friable asbestos containing material.... *As a result of the lack of regulatory guidance from the Environmental Protection Agency*, some schools have not undertaken response action....

(2) *The guidance provided by the Environmental Protection Agency* in its "Guidance for Controlling Asbestos Containing Material in Buildings" *is insufficient* in detail to insure adequate responses. (Emphasis added.)

It is not the intent of this Court to criticize the EPA. However, it must be emphasized that an agency's action (or lack thereof) with respect to administering legislation should not be elevated above the clear wording of the statute that it is charged with enforcing; for "[c]ourts need not defer to agency opinion on pure questions of interpretation." *Int'l Union, U.A.W. v. Brock,* 816 F.2d 761 (D.C.Cir.1987).

"When, as here, a statute's language and history indicate a clear congressional intent, the court may end its journey ... without ever reaching the issue of the extent of deference to be accorded the agency's interpretation." *Transbrasil S.A. Linhas v. Department of Transp.,* 791 F.2d 202, 206–7 (D.C.Cir.1986).

## VIII

## TO EFFECT THE PURPOSE OF 10 U.S.C. § 7311, ASBESTOS MUST BE CONSIDERED A HAZARDOUS WASTE

■ Appellee places great emphasis on the fact that asbestos is not listed as a hazardous waste under RCRA, and further asserts that hazardous wastes included within EPA and/or DHEC lists pursuant to RCRA are more costly to *dispose of* than asbestos. Appellee therefore reasons that, because it cost less to dispose of, asbestos is not worthy of the protection of § 7311.[11]

The evidence simply does not bear out Appellee's position. When asbestos is encountered for removal, special and expensive requirements for treatment, storage, transportation, and disposal of it are triggered. Once asbestos is encountered:

A. A licensed asbestos abatement entity must perform the removal of the asbestos. S.C.Code Regs. 61–86.1, § 2.0. And all employees of the asbestos abatement entity must receive training concerning techniques for handling, and disposal of asbestos and be apprised of the dangers associated therewith. S.C.Code Regs. 61–86.1, § 4.0. (App. p. 39).

B. It is required that the air in the work area and surrounding areas be continually monitored by an air-sampling professional. S.C.Code Regs. 61–86.1, § 4.3.

C. The actual work areas must be isolated and protected. *See* S.C.Code Regs. 61–86.1, § 5.0. (App. p. 40). This is a particularly ominous requirement in ship repair because there may be separate and distinct areas where asbestos is encountered, and each of those areas separate

---

**11.** The definition of hazardous waste focuses on removal, transportation, handling, storage and disposal, not simply disposal. *See* 42 U.S.C. § 6903(5).

zones or work areas must be isolated. Thus if in a ship-repair contract asbestos were to be encountered in fifty different job items, fifty different isolated work zones may have to be set up. (App. p. 36).

4. Within the work area a negative air pressure system must be employed so as to prevent release of asbestos fibers into the atmosphere. (App. p. 39). S.C.Code Regs. 61–86.1, § 5.1.1.5.

5. In addition, S.C.Code Regs. 61–86.1, § 5.1.1.1.4 requires a decontamination system containing a clean room, shower, and equipment room, separated from one another and from the work area by air locks. Furthermore, each worker must dispose of protective clothing or otherwise decontaminate same, shower his person and clean his respirator (which is of course required in any work area) each time he leaves the work area, be it for lunch, a coffee break or otherwise. (App. pp. 40–41). And in ship repair, frequent breaks are required. *Id.*

6. Finally trip-ticket and chain of custody documentation essential to track the asbestos are required. The trip ticket document, at least, is filed with DHEC as EPA's delegatee, for tracking purposes. (App. pp. 74–75).

Because of the requirements imposed on account of the hazards associated with exposure to asbestos fiber, the cost of asbestos removal as opposed to removal of non-asbestos insulation is enormous. The ASBCA found it to be 1000% more costly than removal of regular insulation.

Although Appellee offered testimony that the actual disposal cost for RCRA hazardous waste was more per container than for asbestos, the testimony focused *only* on the cost to bury the waste in the ground. However, Appellee admitted that the disposal cost per drum of asbestos did not include the added expenses for removal, treatment, storage, transportation, and handling of the asbestos incident to its removal. Appellee agreed that when all of these special requirements are considered, the cost of handling and disposing of asbestos could easily be increased by a factor of 850% to 1000% when compared to non-as-

bestos insulation. Appellee confirmed that the extreme added expense was the result of the hazardous nature of asbestos. (App. p. 77).

It would be illogical to conclude that in enacting § 7311 Congress was focusing solely on what it would cost a contractor to place hazardous waste material in the ground. Instead Congress was focusing on the overall increase in cost of performance to a contractor who encounters the hazardous waste during ship repairs.

Section 7311 should be interpreted in light of its purpose, and its obvious purpose is to reimburse contractors for increased costs when encountering unidentified and unquantified hazardous substance wastes.

## IX

## WASTE ASBESTOS IS CONSIDERED HAZARDOUS WASTE IN THE INDUSTRY

The only testimony offered on the point was that asbestos is considered hazardous waste in the industry. (App. p. 46).

## X

## SUPSHIPS CONSIDER ASBESTOS TO BE HAZARDOUS WASTE PURSUANT TO § 7311

SUPSHIP Jacksonville apparently considers asbestos as a hazardous waste for purposes of § 7311. (App. pp. 47–49). Additionally, asbestos was considered a hazardous waste by at least one contracting officer at SUPSHIPCHASN with respect to another vessel. (App. pp. 26–27). However, before the job was awarded, asbestos was deleted as an identified and quantified hazardous waste. (App. p. 7; Opinion of ASBCA). Apparently, SUPSHIP Norfolk also considers asbestos to be a hazardous waste. (App. p. 82; Exh. A–15). This is further evidence that asbestos is considered a hazardous waste under § 7311 even by Appellee.

The evidence presented below overwhelmingly demonstrates that waste asbestos in a ship repair contract is "hazardous

waste" under § 7311 as it existed at the time of the subject contract.[12] Since asbestos was neither identified nor quantified in Job Order No. 115, Appellant is entitled to a renegotiation of the contract to reflect the increased cost incurred as a result of encountering asbestos. The result is mandated by § 7311 despite any contractual provision which may be to the contrary.

## A

### THE 1989 AMENDMENT TO § 7311 DOES NOT SUPPORT A DIFFERENT CONCLUSION

■ In 1989, § 7311 was amended. The focus of the amendment was on two issues. The first issue proposed was a further protection to the contractor, by way of an *indemnity* from the United States for claims against the contractor by others arising out of the contractor's removal, handling, storage, transportation, or disposal of hazardous wastes where the source of said wastes is the vessel. This proposal contained in the House bill was not passed as law. 1989 U.S.C.C.A.N. 1125.

The second issue dealt with hazardous waste generator identification numbers. It was proposed that such numbers would be used by the contractor, the Navy, or both, depending on the circumstances. There had been some doubt as to whether the Navy should be considered a generator and be exposed to whole or partial liability, where otherwise it would have been. See H.R.Rep. No. 99–718, 99th Cong., 2d Sess., at 230 (1986) (House Armed Services Committee), where it is stated that:

> [t]he committee notes further, however, that the identification issue is but one part of the overall relationship between the Navy and its ship repair contractors

concerning responsibility and liability for hazardous waste disposition. The issue is who should bear the ultimate liabilities that may be associated with the *handling* of hazardous wastes. The current absence of a contractual acceptance of such liability by the Navy for any hazardous wastes, including those originating on naval vessels, could make it difficult to assign even partial liability to the Navy should the hazardous wastes become an environmental problem at some future time.

The 1989 amendment requiring the Navy and contractor to utilize generator identification numbers, where applicable, did so with the goal of identifying which of the two parties, or both, generated the materials for purposes of apportioning liability. 1989 U.S.C.C.A.N. 1126. It did not affect the renegotiation aspect of the Act, which was preserved in an amended form.[13]

## XI

### MANDATE

1. Asbestos is a hazardous waste under 10 U.S.C. § 7311.

2. The ASBCA finding that Appellant was not entitled to renegotiation of the subject contract was error.

Appellee is, therefore, ordered to renegotiate the subject contract, and to cover Appellant's increased costs in performing same as a result of encountering 450 lineal feet of asbestos containing lagging and insulation.

AND IT IS SO ORDERED.

---

**12.** The fact that asbestos is so highly regulated under other environmental acts should in and of itself bring waste asbestos within the § 7311 definition. In determining "mill asbestos" to be a "hazardous substance" under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.*, a cousin of RCRA, despite the arguable exclusion of "milled asbestos" under that Act, the Federal District Court of Arizona noted that "[b]ecause asbestos is regulated under both 33 U.S.C. § 1317(a) (the Federal Water Pollution Control Act) and Section 112 of the Clean Air

Act, it is a hazardous substance under CERCLA." *United States v. Metate Asbestos Corp.*, 584 F.Supp. 1143, 1146 (D.Ariz.1984) (citations omitted).

**13.** The provision of the 1989 Amendment, subsection (d) of § 7311, which states that where defined by RCRA, terms used therein have the meaning of the RCRA definition, does not change the result herein. Asbestos meets the RCRA definition of hazardous waste.