Gerald D. CASTOR, Ray G. Stout, Troy J. Kish, John K. Lanter, Wilbert Hall, Leslie G. Harris, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. TH 94–74–C.

United States District Court,
S.D. Indiana,
Terre Haute Division.

Feb. 7, 1995.

---

Brett P. Scott, Civ. Div., Torts Branch, U.S. Dept. of Justice, Washington, DC and Gerald A. Coraz, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for defendant.

**ENTRY (1) DENYING PLAINTIFFS' MOTIONS TO STRIKE AND FOR APPOINTMENT OF COUNSEL, (2) GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT AND (3) DIRECTING ENTRY OF JUDGMENTS**

McKINNEY, District Judge.

The above action is before the court on the plaintiffs' complaints, on the United States'

motion to dismiss and/or for summary judgment, on the plaintiffs' opposition to such motion and on the plaintiffs' motion for appointment of counsel. In addition, plaintiff Gerald Castor has filed a motion to strike the declaration of R.J. Vastlik.

Whereupon the court, having read and examined such pleadings, motions and opposition, and being duly advised, now makes its ruling.

## I. Background

Plaintiffs are or were federal prisoners confined at the USP–Terre Haute. They allege that they have been exposed to toxic, friable asbestos at the Terre Haute institution, that this has endangered their lives and health and that the Federal Bureau of Prisons ("the BOP") has negligently permitted this condition to exist. Their administrative claims were denied by the BOP. Several actions followed, in which the plaintiffs seek millions of dollars in damages from the United States pursuant to the Federal Tort Claims Act. The cases were consolidated for the purpose of resolving the United States' motion to dismiss and/or for summary judgment.[1]

## II. Preliminary Matters

Before discussing the substance of the defendants' motion it is appropriate to resolve the motions for appointment of counsel and to strike the affidavit of R. Vastlik. The plaintiffs' opposition to the defendant's motion also seeks to delay consideration of that motion and hence this also is a matter which should be addressed separately.

### A. Motion for Appointment of Counsel

■ The plaintiffs seek the appointment of counsel through their written motion filed on December 14, 1994. This motion, filed concurrently with their opposition to the defendant's dispositive motion, recites a familiar string of circumstances—that without counsel they will be unable to adequately investigate this case and that they are unfamiliar with the applicable provisions of Indiana law.

■ The plaintiffs recognize that the court is compelled to require them to demonstrate reasonable efforts to secure counsel. *Barnhill v. Doiron,* 958 F.2d 200 (7th Cir.1992), citing *Jackson v. County of McLean,* 953 F.2d 1070, 1073 (7th Cir.1992). It must deny "out of hand" a request for counsel made without a showing of such effort. *Farmer v. Haas,* 990 F.2d 319 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 438, 126 L.Ed.2d 372 (1993). The plaintiffs have supplied the names of four non-Indiana lawyers who have turned them down. This effort is a sham, less than meager, and certainly not "reasonable."

Additionally, the plaintiffs' motion is intrinsically unpersuasive. The straightforward question in such circumstances is this: "given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?" *Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 438, 126 L.Ed.2d 372 (1993). Here, the plaintiffs have been diligent, even vigorous in their cases. They suffer no inability to proceed in this action. They have fully participated with the generous briefing schedule the court has established and have expressed their claims in forceful terms. Their motion for counsel at this point is ill-timed, arriving only after the defendant's dispositive motion has become fully briefed, and hardly the result of individuals gasping for legal acumen. Their knowledge of procedure and of the substantive claim on which they seek to prevail is more than satisfactory in contesting the defendant's motion. Their position, moreover, is not one which can prevail. Thus, even if the requisite "reasonable effort" to secure counsel had been demonstrated here, the assistance of counsel would not make a difference and the request would be denied for this substantive reason.[2] The motion for appointment of counsel is **denied.**

---

1. Two other actions which were consolidated with the designated cases for the purpose of the same motion are being decided separately this day because they followed a different path. Those other cases are TH 94–143–C–T/H and TH 94–142–C–T/H.

2. There is certainly an outcome-based flavor to this assessment, but that is both inevitable and desirable. if the court is to give due and paramount consideration to the relative merits of the plaintiffs' claims. *Maclin v. Freake,* 650 F.2d 885, 887 (7th Cir.1981). "Judges ... recruit

### B. Motion to Strike Affidavit of R.J. Vastlik

Gerald Castor, the plaintiff in TH 94–74–C–M/H, filed a motion to strike the declaration of safety manager R.J. Vastlik on December 14, 1994. This motion is not joined or imputed to the other plaintiffs. The basis of this request is quite direct, *i.e.*, "[t]hat the exhibits thus submitted by Plaintiff in opposition to Defendant's summary judgment motion, taken as a whole, and based upon the entire record thus for [sic: far], proves [sic] that safety manager of USP–Terre Haute perjured himself in his declaration in an effort to deceive the Court as to gra[n]ting the Defendant's summary judgment."

Mr. Castor does not offer any analysis of the declaration which he seeks to have stricken. He does not offer any procedural or substantive reason why it is defective or unworthy of consideration. He offers only his own assertion that the statements in the declaration are false. This, quite simply, is merely a disagreement with the content of those statements and is certainly *not* a basis on which to strike the Vastlik declaration. A contrary rule would have evidentiary materials to which there is a disagreement forever disappearing from the record. That disagreement may have *consequences* in relation to the pending motion, but is not improper on any expressed or discernible basis. Accordingly, plaintiff Castor's motion to strike is **denied**.

### C. Request for Time to Conduct Discovery

The court notes, for the sake of completeness and in deference to the plaintiffs' *pro se* status, that the second full paragraph on the last substantive page of the plaintiffs' "opposition and response to defendant Randall J. Vastlik Declaration" contains the following statement:

> Additionally, Fed.R.Civ.P. 56(f) would preclude defendant of [sic] summary judgment as discovery has not yet been had which Plaintiff[s] submit will produce more evidence, and as such, will strengthen Plaintiffs' cause of action.

The purpose of Rule 56(f) is to provide a safeguard against a premature grant of summary judgment. *King v. Cooke*, 26 F.3d 720, 726 (7th Cir.1994). Although Rule 56 is technically not applicable to the motion to dismiss for the reasons stated in Part III of this Entry, the plaintiffs are unquestionably entitled to a fair opportunity to oppose the defendant's motion. *English v. Cowell*, 10 F.3d 434 (7th Cir.1993).

The circumstances here do not show that there was a lack of fair opportunity or that there is justification to delay ruling on the motion. This conclusion rests on the following specific considerations:

● The complaints were filed in the Summer of 1994 (even before then, in Mr. Castor's case). The motion to dismiss was pending for more than two (2) months before the plaintiffs raised the specter (by innuendo at best) that discovery could turn the tide.

● The United States did not seek a protective order with respect to discovery served on it, the court has not precluded discovery and there has been no issue raised concerning any discovery problems. Whether discovery was sought is not evident, because (1) under Local Rule 26.3 routine discovery requests and responses are not filed with the clerk and (2) neither the defendant nor the plaintiffs have submitted materials obtained through discovery in

lawyers for the parties only when the cases are colorable, the facts may be difficult to assemble, and the law is complex.... Most indigent parties in civil cases must fend for themselves here, attempting to persuade lawyers to take their cases and representing themselves if members of the bar think their claims weak." *DiAngelo v. Illinois Department of Public Aid*, 891 F.2d 1260, 1262 (7th Cir.1989). This admonition is not taken lightly. The plaintiffs here suggest nothing that they would or could uncover as evidence or present as argument which would alter the outcome here. That outcome was clearly foreshaw-

dowed by the nature of their claims and the circumstances in which they have arisen. While counsel may have taken other steps, the court does not discern any different outcome. That may explain why the handful of attorneys the plaintiffs contacted were not tempted to enter the fray. By the same token, of course, this is precisely what *Farmer* has directed that the court consider fundamental to the decision. All factors, in other words, lead to one result: the absence of counsel here has not and would not alter the outcome.

support of their positions with respect to the motion to dismiss and/or for summary judgment.

● There is no suggestion as to what "discovery" the plaintiffs have in mind which would boost their claims. There is no suggestion why the plaintiffs could not have sought information through discovery in a timely fashion, although they requested and secured a 60–day extension of time without mentioning ongoing or contemplated discovery from the United States.

There is likewise no suggestion why now, with the dispositive motion fully briefed, the court should abort its consideration of the motion. The absence of any semblance of diligence by the plaintiffs on this subject, together with the absence of a cogent showing of how postponement of a ruling will enable the plaintiffs to successfully oppose the United States' motion, dictate that the request for a continuance of the matter be denied. *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1001–02 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994); *Otto v. Variable Annuity Life Ins.*, 814 F.2d 1127, 1138 (7th Cir. 1986), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988).

## III. Standard for Ruling on 12(b)(1) Motion

The defendant seeks the dismissal of this action based on a variety of documents outside the pleadings and the plaintiffs have opposed that effort in the same manner. It should not be supposed, however, that this warrants conversion of the motion to one for summary judgment insofar as the United States argues that the court lacks jurisdiction over the plaintiffs' claims. *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986) ("The omission ... of a provision for converting a Rule 12(b)(1) motion into a sum-

mary judgment motion ... was not an oversight.").

On the contrary, the United States makes what *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990), calls a "factual attack" to the court's jurisdiction.[3] In this situation the district court is entitled to receive appropriate evidentiary submissions—"any rational mode of inquiry will do." *Crawford,* 796 F.2d at 929. It must then "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Osborn,* 918 F.2d at 730, quoting *Crawford,* 796 F.2d at 929. That exception is not triggered by the facts of these cases.

Since the United States seeks a case-dispositive outcome based on its motion, it has appropriately notified the plaintiffs of the proper manner in which to contest its evidentiary materials and the consequences of failing to do so. *English v. Cowell,* 10 F.3d 434 (7th Cir.1993). The plaintiffs have been afforded "a full opportunity to present contradicting affidavits or materials in order to cure a jurisdictional or party defect not capable of being resolved on the words of the complaint." *Id.,* 10 F.3d at 437, citing *Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949).

The court has not conducted an evidentiary hearing at which an assessment of credibility was made. It will therefore give credence, for the purpose of deciding the defendant's motion to dismiss, to the adequately supported materials of the plaintiffs. By "adequately supported" the court means the type of materials which would be proper under *Fed.R.Civ.P.* 56(e), for materials with any less indicia of admissibility do not warrant consideration in this context.[4]

---

3. There are other challenges to the plaintiffs' claims in the United States' motion and these do appropriately relate to a conventional argument under *Fed.R.Civ.P.* 56(c). These, however, are not resolved because the challenge to jurisdiction is persuasive.

4. This standard comes as no surprise to the plaintiffs. It is precisely the standard of which the plaintiffs were given notice through the docu-

ment filed on October 7, 1994, pursuant to *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). The same standard is applied to materials supplied by the defendant. However, since the court cannot reasonably weigh conflicting evidence creating disputed issues of fact based merely on documentary evidence and since no hearing has been conducted, it will proceed with the adequately supported factual scenario depicted by the plain-

■ Applying this standard requires that affidavits presented in opposition to the defendants' motion to dismiss be based upon personal knowledge; a statement merely indicating that a purported affidavit is based upon "information and belief" is insufficient. *Price v. Rochford,* 947 F.2d 829, 832–33 (7th Cir.1991); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). Conclusory statements or indications of opinion or belief offered without any factual support are also insufficient to create a genuine issue of fact. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). Rather, affidavits must "cite specific concrete facts establishing the existence of the truth of·the matter asserted." *Hadley v. County of DuPage,* 715 F.2d 1238, 1243 (7th Cir.1983). *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 584–85 (6th Cir.1992) (affidavit which contained nothing more than rumors, conclusory allegations and subjective beliefs could not be considered); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (refusing to consider interrogatory answer which contained hearsay).

## IV. Findings and Conclusions

Having reviewed the procedural posture of the action, therefore, and having also examined the pleadings and pertinent evidentiary materials, the court makes the following findings and conclusions with respect to the United States' motion to dismiss for lack of subject matter jurisdiction.

1. The plaintiffs are or were confined at the USP–Terre Haute. They are or were during that period convicted offenders in the custody of the Federal Bureau of Prisons ("the BOP").

2. The plaintiffs allege that they have been negligently exposed to toxic, friable asbestos at the USP–Terre Haute and that this has endangered their lives and health. They allege that the BOP has negligently permitted this condition to exist. Their administrative tort claims were denied by the BOP and separate complaints under the Federal Tort Claims Act were filed. Although the complaints depict a few variations in specific facts, the complaints present common issues of law which the United States' dispositive motion addresses.

3. The plaintiffs, who are proceeding *pro se,* have opposed the motion to dismiss in unison and the cases have been consolidated for the purpose of resolving the United States' motion.

4. The plaintiffs have been appropriately notified of the nature of the United States' motion, of the proper manner in which to respond and of the consequences of failing to respond. *See Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1989).

5. The United States asserts that the court lacks jurisdiction over the allegations. This is a fundamental question in any case, for "jurisdiction is power to act; a court without power simply may not act, no matter how compelling the circumstances or how equitable the claim." *Bailey v. Sharp,* 782 F.2d 1366, 1369 (7th Cir.1986) (Easterbrook, Concurring). Hence, "judges must consider jurisdiction as the first order of business[ ]." *Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Twp.,* 980 F.2d 437, 440 (7th Cir.1992). As the Supreme Court long ago stated with respect to the power of the federal courts, "the first and fundamental question is that of jurisdiction." *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

■ 6. These actions are brought pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671–2680 (West 1965 & Supp.1993). The FTCA authorizes suits against the United States for negligent performance of governmental functions, providing that the United States shall be liable in the same manner and to the same extent as a private individual under the circumstances. 28 U.S.C. § 1346(b); 28 U.S.C. § 2674. The FTCA is a limited waiver of the United States' sovereign immunity, but the terms of the legislation define the district

tiffs. As will be seen, this scenario (which certainly encompasses *many* disputed issues of fact) is insufficient to survive the defendant's motion to dismiss. Accordingly, in a manner analogous to the standard for ruling on a motion for summary judgment under *Fed.R.Civ.P.* 56(c), the court will construe the facts here most favorably to the plaintiffs as the nonmovants. This is surely a "rational mode of inquiry" consistent with *Crawford.*

court's jurisdiction to entertain the suit. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).[5]

7. It is well-established that provisions of the FTCA allow federal prisoners to sue the United States for injuries sustained while incarcerated. *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805 (1963). The substantive law of the state which is the site of the alleged tort governs claims under the FTCA. *See* 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States,* 369 U.S. 1, 9–10, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962). However, the duty of care owed by the Bureau of Prisons to federal prisoners ultimately is fixed by 18 U.S.C. § 4042, independent of any inconsistent state rule. *Muniz,* 374 U.S. at 164, 83 S.Ct. at 1859. The standard of care created by the relationship between the Bureau of Prisons and the plaintiffs is that the BOP is to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(2). This statutory duty has been interpreted as requiring Bureau of Prisons employees to exercise "ordinary diligence to keep prisoners safe and free from harm." *Cowart v. United States,* 617 F.2d 112, 116 (5th Cir.1980) (quoting *Jones v. United States,* 534 F.2d 53, 54 (5th Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 487, 50 L.Ed.2d 586 (1976)), *cert. denied,* 449 U.S. 903, 101 S.Ct. 275, 66 L.Ed.2d 134 (1980).

8. The FTCA contains a number of exceptions to its limited waiver of sovereign immunity. One of these exceptions, known as the discretionary function exception, is that the United States retains its sovereign immunity against

> any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty

on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). In fashioning the discretionary function exception, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

9. In determining whether the discretionary function exception applies, the court must consider two factors.

a. First, "whether the action [involved] is a matter of choice for the acting employee.... [C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz by Berkovitz v. U.S.,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988) (citations omitted). Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. *Id.*

b. Second, the decision must be based on considerations of public policy. *Id.,* 486 U.S. at 537, 108 S.Ct. at 1959. The discretionary function does not shield all legislative and administrative decisions but only those " 'grounded in social, economic, and political policy.' " *Id.* (quoting *United States v. Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765).

10. Asbestos is a naturally occurring fibrous material that resists fire and most solvents. It was used in the manufacturing of many products and structures during the

---

5. The complaints also contain references to claims under the Fifth and Eighth Amendments. As many of these plaintiffs know, the constitutional dimension of their claims must be pursued under the theory recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The FTCA does not waive the United States' sovereign immunity as to claims based on alleged violations of the Constitution. *Brown v. U.S.,* 653 F.2d 196, 200 (5th Cir.1981). Conversely, "*Bivens* and its progeny do not waive sovereign immunity for actions against the United States." *Laswell v. Brown,* 683 F.2d 261, 268 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). Thus, this language, which seems more rhetorical than substantive in any event, is insufficient to invoke the court's jurisdiction over the United States of America.

first several decades of the Twentieth Century. Its major uses included heat-resistant insulators, cements, building materials, fireproof gloves and clothing, and motor vehicle brake linings. It is, in the words of one court, a "one-time miracle fabric turned cancer-causing nightmare." *Edwards v. Armstrong World Industries, Inc.*, 6 F.3d 312, 313 (5th Cir.1993). It is pervasive in industrial and construction settings. It can also be debilitating and deadly. "It is beyond cavil that asbestos causes or significantly contributes to an increase in mortality and an increase in serious irreversible, or incapacitating reversible, illness...." *Metal Trades, Inc. v. United States*, 810 F.Supp. 689, 698 (D.S.C.1992).[6] Positive identification of asbestos cannot be made by mere visual inspection; instead, a qualified laboratory must analyze representative samples of suspect material. Special procedures are essential for this purpose. *See* 29 C.F.R. § 1910.1001 (Appendix A).

11. The treatment, removal, handling, transporting, and disposing of asbestos is complex and highly regulated. Asbestos must be treated properly, removed properly, handled properly, transported properly and disposed of properly to insure that the asbestos fiber which is hazardous to human health does not become airborne. Asbestos containing material (ACM) does not pose a health risk to building occupants when it is encapsulated. In such condition it obviously does not become airborne. However, encapsulated asbestos fibers can be released into the air when ACM is physically damaged or through deterioration over a period of time.

12. As noted in *Metal Trades*, 810 F.Supp. at 698, Congress has found that "(1) Exposure to asbestos fibers has been identified over a long period of time and by reputable medical and scientific evidence as significantly increasing the incidents of cancer and other severe or fatal diseases, such as asbes-

tosis." *See* 20 U.S.C. § 4011(a)(1). Asbestos is dangerous when inhaled, for "asbestos fibers in the respiratory tract interact with the membranes of the cells lining the trachea and cause the release of enzymes and superoxides which either damage or kill individual cells. If sufficient cells are damaged, tissue (an accumulation of cells) is damaged, or destroyed." *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 505–6 (1993). Symptoms from asbestos-related diseases usually, but not always, occur some decades after exposure.

13. The USP–Terre Haute has ACM. ACM can and should be visually inspected periodically to determine whether the containment material is degraded. Because of this it has an asbestos containment program. It has trained personnel who oversee the containment program. The principal such person at the times pertinent to plaintiffs' claims was Randall J. Vastlik, who held the position of Safety Manager at the USP–Terre Haute. Vastlik has completed specialized training on managing asbestos and was certified in 1989 by the Environmental Protection Agency as an asbestos abatement project supervisor. He has attended annual refresher courses since obtaining that certification.

14. According to the United States, Vastlik's implementation of the asbestos management program at the USP–Terre Haute consisted of various specific activities:

a. First, the institution was divided into "zones" which were inspected monthly. Inmate housing units and the food services area were inspected weekly. The purpose of the inspections was to determine whether there was friable asbestos from ACM and, if so, to take appropriate measures.

b. Second, if friable or other harmful asbestos was found, the affected area was evacuated. The ACM was then encapsulated rather than removed, if possible.

6. "Clinical evidence of the adverse effects associated with exposure to asbestos, tremolite, anthophyllite, and actinolite, is present in the form of several well-conducted epidemiological studies of occupationally exposed workers, family contacts of workers, and persons living near asbestos, tremolite, anthophyllite, and actinolite mines. These studies have shown a definite association between exposure to asbestos, tremolite, anthophyllite, and actinolite and an increased incidence of lung cancer, pleural and peritoneal mesothelioma, gastrointestinal cancer, and asbestosis. The latter is a disabling fibrotic lung disease that is caused only by exposure to asbestos...." 29 C.F.R. § 1910.1001.

This occurred at various times because of vandalism to pipes wrapped in ACM. If abatement (removal) was required, this work was performed by a certified company in compliance with applicable federal regulations. The company performing that task at the USP–Terre Haute was P & M Enterprises, Inc. ("P & M"). P & M is a certified asbestos abatement contractor.

c. Third, P & M functioned as an independent contractor with respect to asbestos abatement. The BOP (principally Vastlik) inspected the contractor's work to ensure compliance with various regulations. This work was performed pursuant to a written contract awarded to P & M by the BOP on February 3, 1993. The contract describes in exhaustive terms the work to be performed, the quality standards to be maintained and the safety procedures to be followed with respect to the work area. It specifically provides that the work is to be performed in compliance with federal standards. The principal objective of this contract was to achieve the abatement of (1) approximately 1279 lineal feet of thermal asbestos containing materials in the crawl space under the food services area and (2) approximately 1500 square feet of asbestos contaminated materials in the crawl space under "E" unit.

15. The plaintiffs dispute certain aspects of the foregoing, but do so in a wholly conclusory fashion. As already demonstrated in Part III of this Entry, conclusory assertions and even specific factual allegations without a showing of the affiant's personal knowledge and competence to testify as to the matters asserted are simply of no evidentiary significance and can be accorded no weight in deciding the defendant's motion. The fundamental facts on which this decision rests, however, are hardly disputed. Each of the complaints being considered in this action, in either its text or through an attached exhibit, contains an explicit reference by the plaintiffs to the fact that BOP officials have contracted for asbestos abatement and management with outside contractors. This fact, which is consistent with what the United States claims (at least in a general sense), shows that the BOP is exercising its discretion in handling ACM at the USP–Terre Haute.

16. It is undisputed that the plaintiffs expressed concern to authorities at the Terre Haute, that inspections were conducted as a result of these concerns and that steps were taken to remedy potentially dangerous situations. *At most,* the plaintiffs have presented the possibility that some of these steps were not taken quickly enough to minimize their concerns or actual exposure to friable asbestos—although it should be noted that the plaintiffs themselves offer only their own assessment of the composition of insulation fibers to which they have been exposed. One particular area of concern over exposure to friable asbestos centered on the main laundry room and UNICOR facilities (an inmate work area). This was inspected in November 1993 by an Area Director of the Occupational Safety and Health Administration (OSHA). This inspection showed no safety violations, did not require USP–Terre Haute authorities to take any action and found that the USP–Terre Haute asbestos management procedures and programs met OSHA standards. The plaintiffs claim that this inspection and the follow-up steps were bogus, but offer nothing but speculation to support the charge. And again, this response shows only dissatisfaction with the *specific manner* in which the BOP is responding to actual or suspected ACM.

17. BOP Policy Statement 1600.6 (February 25, 1992) specifically addresses a variety of procedures relating to asbestos—inspection, handling, testing, management and abatement. The plaintiffs do not challenge this Policy Statement as inadequate or invalid.

18. The BOP's broad statutory duty is not discretionary. The health hazard posed by unencapsulated friable asbestos is not disputed. But the precise manner in which the BOP carries out its duty is not directed by statute and that agency, at least by policy, has responded to concerns of ACM at the Terre Haute institution in a manner consistent with the discharge of its duty under 18 U.S.C. § 4042(2).

19. The plaintiffs' allegations are serious, although their injuries are undocumented even according to those same allegations. In any event, the evidentiary record here permits a full and fair analysis under *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1958–59, and that analysis in these cases is the following:

a. The acts alleged in the complaints "involve an element of judgment or choice." *Id.*, 486 U.S. at 536, 108 S.Ct. at 1958. There is no specific and mandatory regulation, statute or policy requiring a particular course of action by the BOP with respect to the management of asbestos within its institutions. Accordingly, we proceed "to the second prong of analysis and determine whether the discretion involved in the governmental act 'is the kind that the discretionary function was designed to shield.'" *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 976 (10th Cir. 1994) (quoting *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959).

b. Discretion in governmental actions was intended to be shielded by the discretionary function exception to the FTCA only if it represents discretion "based upon considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959. When governmental policy allows for the exercise of discretion, an agent's acts when exercising that discretion are presumed to be grounded in the policy. *United States v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991). In determining whether the challenged actions are grounded in the policy, "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* "Exposure to moderate levels of asbestos is a common fact of contemporary life...." *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir.1993). The decisions and actions alleged by the plaintiffs here, even if negligent, are clearly within the spectrum of matters guided by considerations of public policy. The BOP has exercised policy judgment in the management of asbestos at the USP–Terre Haute in relation to

(1) determining when to encapsulate rather than abate ACM, (2) balancing the safety interests of inmates and staff with the costs and procedures available to respond to ACM, (3) the specific types and frequency of inspections and (4) the practical necessities of operating large institutions such as the USP–Terre Haute.

c. Day-to-day decisions, made in furtherance of a policy, may be protected under the discretionary function exception "because of the impact of those decisions on the 'feasibility and practicality' of a government program with respect to 'staffing and funding' and the 'efficient allocation of agency resources.'" *Kirchmann v. United States*, 8 F.3d 1273, 1277–78 (8th Cir. 1993) (quoting *United States v. Varig Airlines*, 467 U.S. at 819–20, 104 S.Ct. at 2768). Plaintiffs here, of course, are dependent on the BOP to provide and control an appropriate environment, but the fact that the government supplies these services cannot be understood to eliminate the existence and exercise for policy reasons of considerable discretion, especially in the face of a problem as complex to address as ACM. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84–85, 107 S.Ct. 2254, 2259–60, 96 L.Ed.2d 64 (1987). It has been observed in the context of constitutional litigation that "prison officials have broad administrative and discretionary authority over the institutions they manage...." *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). This is a maxim of considerable importance in that context and is of no lesser force when examining the type of responsibilities placed on the shoulders of the BOP and its personnel in carrying out the mandate of 18 U.S.C. § 4042 to provide suitable quarters and provide for the safekeeping, care and subsistence of federal prisoners.

20. Because BOP officials exercise discretion in determining how best to protect and

provide for prisoners, and because that discretion is animated by policy considerations, its decisions and actions challenged here cannot form the basis of a FTCA claim. Therefore, the discretionary function exception applies to the claims in this case and the court lacks jurisdiction over the plaintiffs' claims.

21. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the count is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall) 506, 514, 19 L.Ed. 264 (1868). *See also Fed.R.Civ.P.* 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Cassens v. St. Louis River Cruise Lines,* 44 F.3d 508 (7th Cir.1995).

22. The United States' discretionary function defense in this case is compelling. The court therefore **grants** its motion to dismiss and/or for summary judgment to the extent that it seeks dismissal of this action for lack of subject matter jurisdiction and directs the only permissible action in these circumstances—the entry of final judgment dismissing the action for lack of jurisdiction. The court does not address the other arguments in the defendant's motion because the failure of jurisdiction over the claims pretermits other inquiry. A single judgment shall issue consistent with this Entry and the cases which were previously consolidated with TH 94–74–C–M/H shall be **statistically closed** with a copy of that judgment placed in each file.

**IT IS SO ORDERED.**